IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SABRINA GRETE KAUFMAN,
f/k/a Sabrina Grete Carranza,

                Plaintiff,

    v.

GEICO INDEMNITY COMPANY,

                Defendant.

No. 3:13-cv-01932-HZ

OPINION & ORDER

Keil M. Mueller
Jennifer S. Wagner
Steve D. Larson
STOLL STOLL BERNE
LOKTING & SHLACHTER P.C.
209 S.W. Oak Street
Portland, OR 97214

Rodney F. Pillsbury
PILLSBURY & READ, P.A.
1204 E. Washington
Greenville, SC 29601

       Attorneys for Plaintiff

Joshua Grabel
Sheila Carmody
SNELL & WILMER LLP
One Arizona Center
400 East Van Buren St. Suite 1900
Phoenix, AZ 85004

Douglas G. Houser
Stuart Duncan Jones
BULLIVANT HOUSER BAILEY, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      On June 5, 2015, this Court granted summary judgment to Defendant GEICO Indemnity

Company in this class action lawsuit brought by Plaintiff Sabrina Kaufman.[1] Plaintiff alleged

that Defendant breached the parties' automobile insurance policy contract (hereinafter, "Policy").

At issue was the interpretation of a provision of the Policy regarding the application of

deductibles to damage incurred as a result of a collision between two vehicles insured under one

Policy. This Court found that the plain language of the Policy unambiguously supported

Defendant's interpretation and that Plaintiff's proposed interpretation was unreasonable. See

Opinion & Order, June 5, 2015, ECF 81.

      Defendant now seeks costs from Plaintiff in the amount of $5,375.47.[2] In addition,

Defendant submits a supplementary request for $5,979.50 in attorney's fees for costs incurred

defending the breach of contract allegations made by Arizona resident Dallis Hughes, a former

---

[1] This case was originally brought by Plaintiffs Sabrina Kaufman and Dallis Hughes against Defendants
GEICO, GEICO General Insurance Company, and GEICO Indemnity Company. ECF 1. Mr. Hughes was
voluntarily dismissed from the case. ECF 27. Defendants GEICO and GEICO General Insurance
Company were dismissed from the case by this Court. ECF 64.
[2] Defendant initially sought $5,575.47 but subtracted $200 in its Reply because the Bill of Costs included
fees for pro hac vice application processing, which are not taxable costs. See Kalitta Air L.L.C. v. Cent.
Texas Airborne Sys. Inc., 741 F.3d 955, 958 (9th Cir. 2013). The revised amount is $5,375.47.

plaintiff who was voluntarily dismissed from the case prior to this Court's summary judgment ruling. For the reasons that follow, the Court grants in part Defendant's Bill of Costs and grants in full Defendant's request for attorney's fees.

## STANDARD

### I.    Costs

Under Federal Rule of Civil Procedure 54, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54 creates a presumption in favor of awarding costs to the prevailing party. E.g., Ass'n of Mexican–Am. Educators v. California, 231 F.3d 572, 592 (9th Cir. 2000). "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its discretion ... [and] explain why a case is not ordinary." Id. at 594 (internal quotation marks omitted). To rebut the presumption, the court may consider "the losing party's limited financial resources, misconduct on the part of the prevailing party . . . the importance and complexity of the issues, the merit of the plaintiff's case, . . . and the chilling effect on future . . . litigants of imposing high costs." Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003) (citations omitted). The district court, however, "needs no affirmatively expressed reason to tax costs. Rather, it need only conclude that the reasons advanced by the party bearing the burden— the losing part—are not sufficiently persuasive to overcome the presumption." Id. at 946.

Costs taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821[.]" Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 885 (9th Cir. 2005). Section 1920 lists the specific items a prevailing party may recover as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6). The district court retains broad discretion to decide how much to award, if anything. Padgett v. Loventhal, 706 F.3d 1205, 1209 (9th Cir. 2013); see also Arboireau v. Adidas Salomon AG, No. 01–105–ST, 2002 WL 31466564, at *4 (D. Or. June 14, 2002) (trial judge has "wide discretion" in awarding costs under Rule 54(d)(1)).

II.     **Arizona's Attorney's Fees Statute**

Arizona law provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01 Furthermore, "[t]he award of reasonable attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." Id.

## DISCUSSION

I.     **Costs Generally**

Defendant submits a Bill of Costs in the amount of $5,375.47 against Plaintiff Kaufman. Plaintiff argues that Defendant's Bill of Costs should be denied in its entirety. Plaintiff contends that Defendant failed to confer prior to filing its cost bill, the case had merit, the case was of substantial public importance, awarding costs to Defendant would have a chilling effect on other consumers who might similarly seek to challenge their insurance companies with respect to commonly applicable coverage terms, and there is significant economic disparity between Plaintiff and Defendant.

Defendant concedes that it did not comply with Local Rule 7-1(a)(1), which requires that parties confer prior to filing motions. Defendant conferred with Plaintiff five days after filing its motion. The Court cautions Defendant about such behavior in the future and stresses the importance of the conferral requirement to the efficient operation of the courts. That said, the Court declines to deny the motion due to Defendant's failure to confer, given that the conferral requirement was met prior to Plaintiff filing her objections to this motion.

As to Plaintiff's remaining arguments, the Court disagrees that the case had merit. Plaintiff's proposed interpretation of the Policy was unreasonable. The Policy unambiguously supported Defendant's interpretation—when an accident involves two vehicles insured under one Policy, each vehicle is subject to separate deductibles. See Opinion & Order, June 5, 2015, ECF 81.

Nor does the Court agree that the case was of substantial public importance or that awarding costs to Defendant would have a chilling effect on other consumers. This case is unlike other cases cited by Plaintiff where the Ninth Circuit recognized the importance of testing the boundaries of the law or eradicating unlawful discrimination. See, e.g., Ass'n of Mexican-Am. Educators, 231 F.3d at 592; Stanley v. Univ. of S. California, 178 F.3d 1069, 1080 (9th Cir. 1999). Plaintiff's breach of contract action did not present a complex or novel issue of law. And while Plaintiff argues that the action carried the potential to benefit over two hundred policyholders, this Court never ruled on Plaintiff's motion for class certification. Therefore, the potential impact of this case, even if Plaintiff had succeeded, is speculative.

Finally, Plaintiff's argument regarding the significant economic disparity between her and Defendant is diminished by Plaintiff's testimony that her attorneys paid for all of the costs incurred in the litigation. Kaufman Decl. 25:13-16, ECF 92-1; see also Tibble v. Edison Int'l,

CV–07–5359–SVW (AGRx), 2011 WL 3759927, at *3 (C.D.Cal. Aug. 22, 2011) ("chilling

effect" was minimal because plaintiffs were not liable for costs under the fee arrangement);

Taylor v. AutoZone Inc., No. CV 10-08125-PCT-FJM, 2012 WL 2357379, at *2 (D. Ariz. June

20, 2012) (finding that plaintiffs' personal financial situation did not support setting aside the

presumptive award of costs because plaintiff's counsel was "foot[ing] the bill"); Jardin v.

DATAllegro, Inc., 08–CV–1462–IEG (WVG), 2011 WL 4835742, at *4 (S.D.Cal. Oct. 12,

2011) (denying motion to deny costs in part because plaintiff "has not argued that he—as

opposed to his counsel, pursuant to a fee agreement—will have to pay the cost award himself").

 In sum, Plaintiff provides no basis for distinguishing this case from an "ordinary" case

for which costs are properly allowed. Ass'n. of Mexican–Am. Educators, 231 F.3d at 593

("Federal Rule of Civil Procedure 54(d)(1) establishes that costs are to be awarded as a matter of

course in the ordinary case"). Therefore, the Court proceeds to analyze Plaintiff's specific

objections to Defendant's claimed costs.

## II. Specific Objections

### a. Service of process, witness fee, and transcript fee for Dallis Hughes' deposition

 Dallis Hughes was one of two named plaintiffs in this class action when the case was

filed in October of 2013. On August 18, 2014, Mr. Hughes was voluntarily dismissed from the

case. See ECF 27. On August 22, 2014, Defendant filed a notice of intent to subpoena Mr.

Hughes and served him the following day. See ECF 27 and Cost Bill Ex. A at 4, ECF 83.

 To be awarded as costs, deposition transcripts must have been "necessarily obtained for

use in the case." 28 U.S.C. § 1920(2). "In general, the mere fact that items are neither introduced

into evidence nor otherwise become part of the official court record is not determinative of

whether that item was reasonably or necessarily obtained for use in the case." Frederick v. City

6 - OPINION & ORDER

of Portland, 162 F.R.D. 139, 143 (D. Or. 1995). While it is accurate to state that "disallowance for expenses of depositions not used at trial is within the district court's discretion[,]" it is equally true that a "deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of . . . summary disposition." Nance v. May Trucking Co., No. 3:12–CV–01655–HZ, 2014 WL 6633111, at *9 (D. Or. Nov. 21, 2014) (internal quotation marks omitted); see also T.L. ex rel. Lowry v. Sherwood Charter Sch., No. 03:13-CV-01562-HZ, 2015 WL 667610, at *2 (D. Or. Feb. 15, 2015).

Plaintiff contends that Defendant has failed to show that Mr. Hughes' deposition was necessary. Defendant did not cite Mr. Hughes' testimony in its motions. Accordingly, Plaintiff challenges the cost of Mr. Hughes' deposition transcript as well as various fees associated with the deposition. Specifically, Plaintiff challenges the fee paid to serve Mr. Hughes personally on a rush basis, the payment of a witness fee to Mr. Hughes, and the process server's bill for "mileage," "fee advance," and "affidavit prep."

Defendant contends that Mr. Hughes' deposition was necessary because Mr. Hughes was initially named as a class representative and, therefore, Defendant "had a right to learn from testimony whether Mr. Hughes was an inadequate class representative, and whether he should be dismissed under Rule 23." Def.'s Reply in Supp. Costs 5, ECF 92.

Defendant's argument is unavailing. By the time Defendant subpoenaed Mr. Hughes, he had already been voluntarily dismissed from the case. Mr. Hughes was dismissed with prejudice as a class representative. See Stip. Vol. Dismissal Hughes, ECF 27. Because Defendant offers no reason for why Mr. Hughes' deposition was necessary, other than to learn whether Mr. Hughes should be dismissed from the case, the Court finds that Mr. Hughes's deposition was not

"reasonably necessary." Therefore, the Court deducts $1293.39 for the costs associated with Mr. Hughes' deposition.

### b. Depositions of Mr. Antonacci and Ms. Franklin

Plaintiff opposes Defendant's request of $1,654.70 for court reporting services in the depositions of Mr. Antonacci and Ms. Franklin. Plaintiff argues that no part of the transcripts of these depositions was used in support of Defendant's motion for summary judgment or in opposition to Plaintiff's motion for class certification. In other words, Plaintiff argues that these depositions were unnecessary.

Defendant explains that Plaintiff initiated the depositions of Mr. Antonacci and Ms. Franklin as corporate designees under Federal Rule of Civil Procedure 30(b)(6). In addition, Plaintiff relied on Mr. Antonacci's deposition in its Motion for Class Certification. See, e.g., Pl.'s Mot. Class Cert. 5, ECF 51.

The Court finds that Plaintiff's reliance on Mr. Antonacci's deposition is enough to establish that Defendant was justified in ordering the transcript of his deposition. However, without a more detailed explanation of why Defendant believed that ordering a transcript of Ms. Franklin's deposition was necessary, Defendant's general argument that it was necessary to attend Ms. Franklin's deposition does not demonstrate the necessity of ordering the transcript. Thus, the Court deducts $605.90 for the cost of Ms. Franklin's deposition transcript.

### c. Deposition costs beyond reporter fees and transcript costs

Plaintiff challenges Defendant's effort to seek the following costs related to all depositions, including those of named class representative Ms. Kaufman and her husband, Mr. Kaufman: electronic transcripts, delivery, production and handling, and archive fees. According to Plaintiff, because these items are not listed in 28 U.S.C. § 1920, the costs are not recoverable.

As discussed above, the Court will deduct any costs related to the depositions of Mr. Hughes and Ms. Franklin. As to the depositions of Mr. Antonacci, Mr. Fetchina, Ms. Kaufman, and Mr. Kaufman, Defendant states that the listed costs were related to "reasonably necessary" depositions. Defendant provides no explanation as to why these specific costs were necessary.

Defendant cites Hollowell v. Kaiser Found. Health Plan of the Nw., No. 3:12-CV-2128-AC, 2014 WL 6750325, at *3 (D. Or. Dec. 1, 2014) for the proposition that the prevailing party is entitled to the cost of obtaining an electronic copy of a deposition. However, Hollowell clearly states that the prevailing party is entitled to "the cost in obtaining a printed **or** . . . electronic copy" of the deposition. Id. (emphasis added). Defendant cites no case that holds that a prevailing party is entitled to copies of the same deposition in a variety of formats. In the absence of any explanation from Defendant as to why electronic transcripts were necessary in addition to the paper copies, the Court finds that their costs are not recoverable. Defendant's general assertion that the transcripts were necessary is insufficient. See id. at *5 ("As courts in this district have consistently held, the prevailing party's conclusory assertion that the standard was in fact met is insufficient to justify an award of costs.").

As to the fees for delivery of the depositions, those costs are not taxable under § 1920. Adidas Am., Inc. v. Payless Shoesource, Inc., No. CIV.01-1655-KI, 2009 WL 302246, at *3 (D. Or. Feb. 9, 2009) (citing Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006).

Defendant does not explain what the "production and handling" or "archive" fees are related to depositions for which they request costs. Therefore, the Court grants Plaintiff's request to deduct these fees.

In sum, in addition to the deduction of all costs related to the depositions of Mr. Hughes and Ms. Franklin, the Court deducts an additional $354.10 for costs for electronic copies of transcripts, delivery, production and handling, and archiving the depositions of Mr. Antonacci, Mr. Fetchina, Ms. Kaufman, and Mr. Kaufman.

### d.  Videotape expenses

Defendant requests $1,406.36 in videography-related costs incurred in connection with the depositions of Mr. Hughes, Ms. Kaufman, and Mr. Kaufman. The Court deducts $514.49 in videography-related costs related to Mr. Hughes because his deposition was not reasonably necessary, for the reasons explained above.

As to Ms. and Mr. Kaufman, Defendant argues that videotaped depositions were necessary because "it was evident that the truth was not being told," Ms. and Mr. Kaufman might have been unavailable at trial, and Defendant anticipated that these witnesses would be replaced with other class representatives. Def.'s Reply in Supp. Costs 8, ECF 92. None of these reasons justify an award of videography-related costs. For each of the reasons offered by Defendant, the Court is unable to see why a written deposition transcript would not have sufficed. The demeanor of any witness in a case is important, however this does "not automatically convert a videographer's fee into a recoverable item of cost where a court reporter also attended and transcribed the deposition." Pullela v. Intel Corp., No. CV 08-1427-AC, 2010 WL 3361089, at *3 (D. Or. Aug. 25, 2010) aff'd, 467 F. App'x 553 (9th Cir. 2012); see also Davico v. Glaxosmithkline Pharmaceuticals, CV No. 05–6052–TC, 2008 WL 624049, at *2 (D. Or. Jan. 23, 2008) ("In short, if a party wishes to videotape a deposition that is not a perpetuation deposition, it may certainly do so at its own expense, but this court is not going to pass on what it views to be an unnecessary expense to the other party by awarding such in a bill of costs.").

Accordingly, the Court deducts $891.88 for the cost of videotaping the depositions of Ms. and Mr. Kaufman from the bill of costs.

### e.  Certified copies of public documents

Defendant requests $143.24 in fees for "certified true copies of public documents." Costs Bill Ex. A at 1, ECF 83. Defendant procured copies of the Insurance Division's records of policy forms submitted by several auto insurers from the Oregon Department of Consumer and Business services. Id. at 4. Plaintiff argues that such expenses are not expressly permitted under 28 U.S.C. § 1920 and that, furthermore, the documents obtained were not necessary for use in this case. Defendant contends that the documents were necessary evidence to show that it was standard practice in the insurance industry, and approved by insurance regulators, to apply two deductibles when two automobiles under the same policy collide and each sustains damage.

The documents at issue are copies of "materials where the copies are necessarily obtained for use in the case." See 28 U.S.C. § 1920. Accordingly, the Court allows Defendant to recover the costs for obtaining these documents. See Harrington v. City of Portland, No. CIV. 87-516-FR, 1990 WL 177406, at *4 (D. Or. Nov. 8, 1990) ("The court finds that the certified copies were necessarily obtained for use at trial and therefore are taxable as costs.").

## III.  Summary of Costs Granted

Defendant requests $5,375.47 in costs. The Court deducts the following costs:

- $1293.39 for costs associated with the deposition of Dallis Hughes ($195.20 for service of summons and subpoenas, $515.70 for deposition transcript, $514.49 for videotape of deposition, $68 for witness fee)

- $605.90 for Ms. Franklin's deposition

- $354.10 for fees for electronic copies, delivery and production, and archiving of depositions of Mr. Antonacci ($125), Mr. Fetchina ($125), Ms. Kaufman ($30), and Mr. Kaufman ($74.10)

- $891.88 for the videotape of the depositions of Ms. and Mr. Kaufman

In sum, the Court deducts $3145.27 from Defendant's requested costs. The Bill of Costs is allowed in the amount of $2,230.20.

**IV.    Attorney's Fees**

Defendant submits a request for $5,979.50 in attorney's fees incurred defending the breach of contract allegations by Arizona resident Dallis Hughes, a dismissed plaintiff in this case. Defendant seeks these fees from Mr. Hughes. The Court grants Defendant's request.

Plaintiff objects to Defendant's request for several reasons. Plaintiff notes that Defendant failed to confer, pursuant to LR 7-1(a)(1) prior to filing this motion.[3] Plaintiff also argues that Oregon law regarding attorney's fees, not Arizona law, applies. In addition, even if Arizona law applies, Plaintiff contends that this Court should deny the motion. Finally, Plaintiff specifically objects to many of Defendant's claimed fees on the grounds that they are not recoverable.

The Ninth Circuit has explained:

> In an action where a federal district court exercises subject matter jurisdiction over a state law claim, so long as state law does not contradict a valid federal statute, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed. Under Oregon choice-of-law provisions, the state law chosen by the parties to control the substantive issue under dispute also controls the issue of attorney's fees, unless doing so would circumvent a fundamental public policy of Oregon law.

Avery v. First Resolution Mgmt. Corp., 568 F.3d 1018, 1023 (9th Cir. 2009) (internal quotation marks and citations omitted). Here, this Court exercised subject matter jurisdiction over Mr. Hughes' breach of contract claim, which was premised upon an insurance policy that contained the following choice-of-law provision: "The policy and any amendment(s) or endorsement(s) are to be interpreted pursuant to the laws of the state of Arizona." D.'s Reply Ex. 2 at 17, ECF 93-1.

---

[3] The Court refers the parties to the discussion about the conferral requirement in the Bill of Costs analysis above.

Therefore, the only reason not to apply Arizona law to Defendant's motion for attorney's fees would be if Arizona's law circumvents a fundamental public policy of Oregon.

Plaintiff argues that awarding attorney's fees to Defendant would be in direct violation of Oregon public policy as embodied in ORS 20.082 (allowing for attorney's fees in certain small contract claims), which expressly excluded from its application "[c]ontracts for insurance[.]" <u>See</u> ORS 20.082(5)(a). Defendant counters that Oregon has no policy interest relating to the application of attorney's fees for an Arizona resident who entered into a contract agreeing to interpret that contract pursuant to Arizona law.

In <u>Seattle-First Nat. Bank v. Schriber</u>, 51 Or. App. 441, 449, 625 P.2d 1370, 1374 (1981), the Oregon Court of Appeals declined to apply Oregon's attorney's fee statute in a case where none of the parties was a resident of Oregon at the time of making the contract, even though the defendants had subsequently moved to Oregon. The defendants argued that the public policy behind Oregon's statute was so important that, even if Washington had closer contacts with the transaction, the trial court should have applied the Oregon statute. <u>Id.</u> The Oregon Court of Appeals concluded that "'irrespective of the laudable public policy' behind Oregon's statute, because the defendants had moved to Oregon after they had entered into the contract with the plaintiff, their residence in Oregon was merely fortuitous, and, therefore, Oregon had 'no real interest based upon policy *in this particular case*' that conflicted with Washington's interest." <u>Capital One Bank v. Fort</u>, 242 Or. App. 166, 173, 255 P.3d 508, 512 (2011) (quoting <u>Seattle-First Nat. Bank</u>, 51 Or. at 625).

The Oregon Court of Appeals recently affirmed the principles enunciated in <u>Seattle-First Nat. Bank</u>. <u>See</u> <u>Capital One Bank</u>, 242 Or. App. 166. However, in <u>Capital One Bank</u>, the court found that Oregon law applied, even though the plaintiff in was a Virginia-chartered bank. <u>Id.</u>

The defendant was an Oregon resident at the time he entered the contract, there was unequal bargaining power between the parties, and the breach of contract action was initiated in an Oregon court. Id. Therefore, Oregon had a materially greater interest than Virginia in the determination of the conditions under which the prevailing party could recover attorney's fees. Id.

In this case, the Court agrees with Defendant that Arizona law applies. Mr. Hughes, a resident of Arizona, entered into the insurance policy contract with GEICO, a Maryland corporation. This case was filed in the District of Oregon only because the other named plaintiff, Ms. Kaufman, is an Oregon resident. As a result, Oregon has even less of an interest in the case than it did in Seattle-First Nat. Bank or Capital One Bank. Plaintiff fails to establish any "clear and *overpowering* policy reason" to interfere with the parties' freedom to choose Arizona law in this case. See Fiedler v. Bowler, 117 Or.App. 162, 843 P.2d 961 (1992) (emphasis in original) (declining to apply Oregon law where the parties had agreed to designate Indiana law as the governing law). The Court fails to see how Oregon has an interest relating to the application of Arizona's attorney's fee statute to Mr. Hughes, such that applying Arizona's attorney's fee statute would circumvent a fundamental public policy of Oregon.

Plaintiff next cites Federal Rule of Civil Procedure 41(a)(1) in support of her argument that Mr. Hughes is not bound by the final judgment in this case because he was voluntarily dismissed as a party before judgment was entered. According to Plaintiff, Mr. Hughes therefore cannot be liable for attorney's fees.

As an initial matter, the Court notes that Rule 41(a)(1) applies to the dismissal of "actions," not parties. See Fed. R. Civ. P. 41. Furthermore, it is "well established" that a federal court may consider collateral issues, such as attorney's fees, after an action is no longer pending.

Moore v. Permanente Med. Grp., Inc., 981 F.2d 443, 445 (9th Cir. 1992) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990); see also Indoor Billboard Nw. Inc. v. M2 Sys. Corp., No. 3:12-CV-01338-BR, 2013 WL 3146850, at *2 (D. Or. June 18, 2013); Arnett v. USAA Cas. Ins. Co., No. CV 11-02569-PHX-JAT, 2012 WL 2339321, at *1 (D. Ariz. June 19, 2012).

In addition, an adjudication on the merits is not a prerequisite for recovering attorney's fees under Arizona law. Med. Protective Co. v. Pang, 740 F.3d 1279, 1283 (9th Cir. 2013). Arizona courts have held that attorney's fees may be awarded at more than one point during the course of litigating an action arising out of contract. Id.; see also Vicari v. Lake Havasu City, 222 Ariz. 218, 213 P.3d 367, 373–74 (Ariz. Ct. App. 2009) (approving award of attorney's fees where case terminated by voluntary dismissal); Britt v. Steffen, 220 Ariz. 265, 205 P.3d 357, 359 (Ariz. Ct. App. 2008) (holding defendant could be "successful" when complaint was dismissed without prejudice for failure to prosecute). Therefore, the Court proceeds to weigh the appropriate factors under Arizona law to determine whether Defendant is entitled to attorney's fees.

### a.  Factors under A.R.S. § 12-341.01

In exercising its discretion to award attorney's fees under A.R.S. § 12–341.01, a court should consider all relevant factors including the "Warner factors." R & J Recovery L.L.C. v. Wells Fargo Bank N.A., No. 1 CA-CV 14-0079, 2015 WL 848242, at *1 (Ariz. Ct. App. Feb. 26, 2015). In Associated Indem. Corp. v. Warner, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985), the Arizona Supreme Court listed the following factors:

1. The merits of the claim or defense presented by the unsuccessful party;

2. Whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;

3. Whether assessing fees against the unsuccessful party would cause an extreme hardship;

4. Whether the successful party did not prevail with respect to all of the relief sought;

5. The novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction;

6. Whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

In this case, the Court's analysis of several of these factors mirrors the analysis already provided regarding Defendant's Bill of Costs. The issue of the case's merits, the potential hardship of assessing fees against the unsuccessful party[4], and whether the award would discourage other parties from litigating legitimate contract issues are the same as already explained in this Opinion. Plaintiff does not allege that the litigation could have been avoided or that there is a dispute as to whether Defendant prevailed with respect to all relief sought.

Therefore, Plaintiff's only remaining argument is that the legal question presented in this case was "novel." Plaintiff argues that it was novel because it was a previously untested claim. However, even if Plaintiff was correct, novelty alone would not compel a denial of attorney's fees. In re Estate of Parker, 217 Ariz. 563, 569, 177 P.3d 305, 311 (Ct. App. 2008) (citing Indian Vill. Shopping Ctr. Inv. Co. v. Kroger Co., 175 Ariz. 122, 125, 854 P.2d 155, 158 (App. 1993) (declining to hold that the trial court abused its discretion in awarding attorney's fees "simply because ... the case raises a new or novel issue in this jurisdiction"). Furthermore, just because this particular claim had not been previously tested does not mean that it is novel. Plaintiff's argument had no support in the plain language of the contract. U.S. ex rel. Cafasso v. Gen.

---

[4] As with Plaintiff Kaufman, Mr. Hughes testified that his attorneys had represented to him that he would not be responsible for any of the costs of litigation. Def. Reply Ex. 3, Hughes Depo. 12:2-24, ECF 93-1. Therefore, the Court is not persuaded by Mr. Hughes' declaration regarding his lack of ability to pay attorney's fees.

Dynamics C4 Sys., Inc., No. CV06-1381-PHX-NVW, 2009 WL 3723087, at *8 (D. Ariz. Nov. 4, 2009) aff'd sub nom. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047 (9th Cir. 2011); citing In re Estate of Parker, 217 Ariz. 563, 569, 177 P.3d 305, 311 (Ct. App. 2008) (absence of applicable precedent does not preclude award of fees where "the result was compelled by the plain language of the statute"). Accordingly, the Court does not find the case to be novel, such that it would be appropriate to deny the motion for attorney's fees.

**b.  Specific objections to entries in Defendant's motion**

Plaintiff argues that, even if Defendant is awarded attorney's fees, those fees should be significantly reduced, because a significant portion of the fees are unrelated to Mr. Hughes' individual claim and because fees connected to Mr. Hughes' former spouse, Ms. Hughes, are not recoverable. Plaintiff's arguments are unavailing.

Attorney's fees may be recovered by successful parties under A.R.S. § 12–341.01(A) only to the extent that they were incurred litigating claims "arising out of a contract." Bldg. Innovation Indus., L.L.C. v. Onken, 473 F. Supp. 2d 978, 988 (D. Ariz. 2007) (citing Ramsey Air Meds, LLC v. Cutter Aviation, Inc., 198 Ariz. 10, 13, 6 P.3d 315, 318 (Ct. App. 2000).

Plaintiff argues that any time spent in relation to Mr. Hughes' status as a putative class representative under Federal Rule of Civil Procedure 23 did not "arise out of" Mr. Hughes' individual breach of contract claim. Plaintiff is mistaken. The only reason Defendant investigated whether Mr. Hughes was a proper class representative is because Mr. Hughes was named in the action under Rule 23. In other words, the issue of Mr. Hughes' adequacy as a putative class representative would never have arisen in the absence of the contract between him and Defendant. Accordingly, any work done by Defendant regarding Mr. Hughes as a class

representative is "sufficiently interwoven with the contract claim to fall within the ambit of the award." U.S. ex rel. Cafasso, 2009 WL 3723087, at *8.

As to fees that relate to Ms. Hughes, she was a key fact witness because she hit Mr. Hughes' car, thereby triggering Mr. Hughes' claim under the insurance policy with Defendant. The argument that Defendant's work related to Ms. Hughes did not arise out of the contract is without merit.

## CONCLUSION

Defendant's Bill of Costs [83] is granted in part, in the amount of $2,230.20. Defendants' Motion for Attorney Fees [84] is granted in full, in the amount of $5,979.50.

IT IS SO ORDERED.

Dated this _____3_____ day of _____September_____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER